UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

PAULETTE METOYER,
Trustee of Paulette M. Metoyer
Revocable Trust dated
January 15, 1994,

    Plaintiff,

v.

WASHTENAW COUNTY ROAD
COMMISSION, and
ANN ARBOR CHARTER
TOWNSHIP BOARD,

    Defendant.
_____/

Case No.

Hon.

"Demand for Jury Trial"

## VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL

**NOW COMES** Plaintiff **PAULETTE METOYER**, Trustee of Paulette M. Metoyer Revocable Trust Dated January 15, 1994, by and through his counsel, Matthew C. McManus (P77397), and hereby asserts this Verified Complaint against Defendants Washtenaw County Road Commission and Ann Arbor Charter Township Board based on the following:

1

## PARTIES

1. Plaintiff, Paulette Metoyer, Trustee of Paulette M. Metoyer Revocable Trust Dated January 15, 1994, is a resident of Ann Arbor, Michigan, residing at 467 Dhu Varren Road, Ann Arbor, MI 48105.

2. Defendant, Washtenaw County Road Commission (WCRC), is a Michigan Road Commission exercising jurisdiction over the county road system of Washtenaw County under the authority of the Michigan Highway Act, MCL 220.1 et seq., and maintains its principal offices at 555 North Zeeb Road, Ann Arbor, Michigan 48103, telephone (734) 761-1500.

3. Defendant, Ann Arbor Charter Township is a Michigan municipal corporation located in Washtenaw County and subject to the laws of the State of Michigan, and is charged with the keeping the public health, safety and welfare of its residents and is a governmental entity responsible for overseeing and managing the affairs of Ann Arbor Charter Township, at the direction of the Ann Arbor Township Board for the establishment and administration of Special Assessment Districts (SADs).

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under 28 U.S.C. § 1331, as it arises under the Constitution and laws of the United States, including the Fourteenth Amendment and 42 U.S.C. § 3601-3619.

2

5. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in this district, and the Defendants reside or are situated in this district.

## FACTUAL ALLEGATIONS

6. Plaintiff has been a long-standing resident of Dhu Varren Road (DVR) since June 1,1984, when Plaintiff and her husband purchased their property.

7. Plaintiff, since residing on DVR, has fulfilled her financial obligations with the expectation that the Washtenaw County Road Commission (WCRC) and Ann Arbor Township would maintain the roadways, considering the prior SAD authorized in 1985. The construction commenced in April 1986 and was completed in October 1986.

8. Dhu Varren Court (DVC) was dedicated to Washtenaw County in January 1980, with paving as a precondition to the County's acceptance of DVC as a county road.

9. Based on information and belief, DVC was paved in late 1979 following the purchase of Dhu Varren Farms by Solent in 1978.

10. Based on information and belief, the acceptance of DVC by Washtenaw County included an agreement that WCRC would maintain the roadway as it was at the time of dedication.

11. In 1985, due to the deteriorated condition and lack of maintenance on DVR, which was a dirt road at the time, Plaintiff circulated a Special Assessment District (SAD) petition to pave DVR under PA 246 (**Exhibit A**). At that time, no Solent homes had been built on DVC, although the road was paved before Plaintiff purchased her property in 1983.

12. The SAD was approved under PA 246, and the paving of DVR began in the spring of 1986. It was a six-month project involving soil excavation, gravel fill, and subsequent compression before the final asphalt paving in the autumn of 1986.

13. Despite the initial paving, by the year 2000 DVR and DVC have deteriorated significantly over the past decade due to deferred maintenance, including poor vegetation control that impairs road safety and integrity.

14. Initially, for the first ten years after DVR was paved, it appeared that WCRC was properly maintaining the road, however, beginning in 1995, the regular maintenance of DVR ceased, and the road began to deteriorate further.

15. DVR and DVC conditions continued to worsen due to the WCRC's failure to properly maintain the roads, violating statutory obligations under Michigan law, specifically the Michigan Transportation Fund (MTF), Public Act 51 of 1951 (MCL § 247.660), which requires WCRC to efficiently and adequately maintain public roads.

4

16. WCRC's declaration of "no intent" to perform future maintenance on DVR and DVC further breaches its statutory obligations and jeopardizes road safety.

17. In 2016, a SAD petition was circulated by a neighbor regarding DVR (**Exhibit B**).

18. The 2016 SAD petition being circulated prompting Plaintiff to respond with a letter dated February 15, 2016, detailing WCRC's neglect and citing violations of state law over the past decade (**Exhibit C**).

19. In her 2016 letter, Plaintiff highlighted WCRC's public announcement of "no intent" to perform future maintenance, the misuse of Public Act 246 to fund road maintenance, inflated costs, misleading information, and the unfair allocation of costs between residents.

20. As more residents sold their homes or passed away, Plaintiff continued to object to the imposition of special assessments that unfairly burdened residents with the cost of road maintenance.

21. In the spring of 2023, another SAD was proposed under PA 188, related to the maintenance of DVR and DVC (**Exhibit D and Exhibit E**).

22. Plaintiff again voiced her concerns to Ann Arbor Township, objecting to the inequitable financial burden imposed on residents (**Exhibit F and Exhibit G**).

5

23. Several other neighbors also voiced their concerns to Ann Arbor Township, objecting to the SAD that was being proposed under PA 188 (**Exhibit H**)

24. The proposed Dhu Varren Public Roadway Special Assessment District (SAD) under Public Act 188 seeks to improperly transfer the financial burden of routine road maintenance from WCRC to the residents through a special assessment.

25. The cost estimates for the SAD include a markup of 100-140% over subcontractor estimates and administrative fees, suggesting fiscal irresponsibility and a lack of transparency.

26. The SAD includes unnecessary and costly additional work, including a creation of an island, that serves no purpose other than to create a community space, further increasing the financial burden on residents.

27. The SAD disproportionately impacts long-standing, elderly residents, imposing an undue financial burden on them in violation of equal protection principles outlined in the Michigan Constitution (Art. I, § 2).

28. The application of Public Act 188 (MCL § 41.722(1)(c)) to shift financial responsibility for routine road maintenance to residents through the SAD is a misuse of the Act, which is intended for public improvements rather than ongoing maintenance.

29. The allocation of costs between DVR and DVC lacks clarity and fairness, particularly for residents of Sunrise and Skyline Streets, who primarily use DVR and not DVC.

30. Long-standing legal precedent, including *Adams v Bay City*, 78 Mich 211 (1889), and *Dixon Rd Group v City of Novi*, 426 Mich 390 (1986), requires that special assessments reflect the actual benefits derived by each property, specifically an increase in property value.

31. The SAD fails to account for this and instead imposes an unfair flat-rate assessment that does not reflect the actual benefits received by each property.

32. The Improvements Act (1954 PA 188) requires that assessments for properties in a special assessment district be proportionate to the benefit each property receives from the improvements. Splitting the cost equally among all properties, as proposed in the SAD, violates this legal requirement.

33. Properties within the SAD that do not directly access DVR or DVC, or are legally restricted from doing so, receive minimal to no benefit from the improvements, yet are subject to the same assessment as those who benefit directly, violating the proportionality required under the Improvements Act.

34. An email from Michael Ann Hunt on July 29, 2024 (**Exhibit I**), indicates that community events, such as movie nights and other gatherings, are being planned on the public roadways. These events raise several concerns,

including: a. The costs of participation ($65 for families with children, $35 for singles) create issues of affordability and inclusivity; b. Public roadways used for private events block emergency vehicles from reaching emergencies, posing a safety risk; c. The practicality and safety of holding movie nights on folding chairs in the middle of a street, particularly concerning the placement of a porta potty and bonfires; d. The legality of activities like bonfires and BYOB events, which may require permits; e. The use of a University of Michigan email to organize these private events, raising concerns about the propriety of using public resources for private functions.

35. These events suggest that public funds and public roadways are being improperly used for private gatherings, which imposes an unnecessary financial burden on residents while potentially violating township regulations.

## **COUNT I: VIOLATION OF STATUTORY DUTIES (PUBLIC ACT 51 OF 1951, MCL § 247.660)**

36. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-32, herein.

37. Public Act 51 of 1951 (MCL § 247.660) imposes a statutory duty on the Washtenaw County Road Commission (WCRC) to keep public roads under its jurisdiction in reasonable repair, ensuring they are safe and convenient for public travel.

8

38. The statute specifically requires WCRC to allocate funds from the Michigan Transportation Fund (MTF) to maintain the roads and ensure their usability and safety.

39. DVR (Dhu Varren Road) and DVC (Dhu Varren Court) are public roads under the jurisdiction of WCRC, and WCRC is therefore obligated under Public Act 51 to maintain them in reasonable repair.

40. WCRC has failed to perform necessary maintenance on DVR and DVC, allowing the roads to deteriorate to unsafe conditions, including potholes, erosion, and poor vegetation control, which impede safe travel especially when entering and exiting driveways.

41. This failure to maintain DVR and DVC violates WCRC's statutory duties under Public Act 51, as these conditions pose a significant risk to the safety and convenience of the public, including Plaintiff and other residents who regularly use these roads.

42. As a direct result of WCRC's breach of its statutory duties, Plaintiff and other residents have suffered harm, including but not limited to unsafe road conditions, diminished property values, and the threat of unjust financial assessments through the proposed Special Assessment District (SAD).

43. Plaintiff seeks a declaratory judgment that WCRC has violated its statutory duties under Public Act 51 of 1951 and an injunction compelling WCRC to perform its statutory obligations to maintain DVR and DVC.

### COUNT II: MISUSE OF PUBLIC ACT 188 (MCL § 41.722(1)(c))

44. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-40, herein.

45. Public Act 188 (MCL § 41.722(1)(c)) is intended to provide a mechanism for funding the construction of public improvements, not for the ongoing maintenance of existing infrastructure.

46. The Act allows for the creation of Special Assessment Districts (SADs) for the purpose of financing public improvements that provide a specific benefit to the properties assessed.

47. The use of Public Act 188 by Defendants to impose a SAD for the routine maintenance of DVR and DVC is a misuse of the statute, as maintenance does not constitute a "public improvement" under the intended purpose of the Act.

48. The routine maintenance of roads such as DVR and DVC falls under the statutory duties of WCRC as per Public Act 51 of 1951 and should be funded through the Michigan Transportation Fund (MTF), not through special assessments imposed on residents.

49. By using Public Act 188 to shift the financial responsibility for road maintenance to the residents through a SAD, Defendants are circumventing their statutory obligations and misapplying the law.

50. This misuse of Public Act 188 results in an unlawful financial burden being placed on Plaintiff and other residents, who are being required to pay for what should be routine maintenance carried out by WCRC.

51. Plaintiff seeks a declaratory judgment that the use of Public Act 188 for imposing the SAD for routine maintenance is unlawful and an injunction preventing its implementation.

## COUNT III: VIOLATION OF DUE PROCESS (14TH AMENDMENT, U.S. CONSTITUTION)

52. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-48, herein.

53. The Due Process Clause of the 14th Amendment to the U.S. Constitution guarantees that no person shall be deprived of life, liberty, or property without due process of law.

54. The implementation of the SAD by the Defendants without providing adequate notice, a fair hearing, or the opportunity for residents to challenge the assessment violates the procedural due process rights of the Plaintiff and other affected residents.

55. The SAD was proposed and moved towards implementation without proper transparency or engagement with the community, failing to provide sufficient information or opportunity for the residents to voice their concerns or objections, while written submissions go ignored.

56. The process used by Defendants to establish the SAD was arbitrary, lacked fundamental fairness, and deprived Plaintiff of a meaningful opportunity to participate in the decision-making process, thereby violating her due process rights.

57. As a result of this violation of due process, Plaintiff seeks a declaratory judgment that the actions of the Defendants in implementing the SAD without proper notice or a fair hearing process violate the Due Process Clause of the 14th Amendment and an injunction preventing its implementation.

### COUNT IV: EQUAL PROTECTION VIOLATION (MICHIGAN CONSTITUTION, ART. I, § 2)

58. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-54, herein.

59. Article I, Section 2 of the Michigan Constitution guarantees that no person shall be denied the equal protection of the laws, and no person shall be discriminated against based on arbitrary classifications.

60. The proposed Special Assessment District (SAD) disproportionately impacts elderly, long-standing residents, including Plaintiff, by placing an undue financial burden on them in relation to other residents (**Exhibit J**).

61. The Defendants' decision to impose the SAD without considering the disparate impact on elderly residents constitutes a form of discrimination and arbitrary classification, violating the equal protection guarantees of the Michigan Constitution.

62. The disparate impact is evident in the allocation of costs under the SAD, which disproportionately affects elderly residents who have lived in the area for decades and who may be on fixed incomes, making it difficult for them to bear the financial burden imposed by the SAD.

63. The discriminatory impact of the SAD is not justified by any legitimate governmental interest, and the burden imposed on elderly residents is excessive compared to any benefits that might be derived from the SAD.

64. As a result of this violation of equal protection, Plaintiff seeks a declaratory judgment that the proposed SAD violates the Michigan Constitution and an injunction preventing its implementation.

## COUNT V: EQUAL PROTECTION VIOLATION (14TH AMENDMENT, U.S. CONSTITUTION)

65. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-61, herein.

66. The Equal Protection Clause of the 14th Amendment to the U.S. Constitution requires that no state shall deny any person within its jurisdiction the equal protection of the laws.

67. The proposed SAD disproportionately impacts elderly residents, including Plaintiff, by imposing a greater financial burden on them without a rational basis or a justified governmental interest.

68. The SAD creates an arbitrary classification that unfairly targets elderly and long-standing residents, subjecting them to disparate treatment compared to other residents in the community (**Exhibit J**).

69. The disparate impact of the SAD on elderly residents is not justified by any legitimate governmental purpose and results in discriminatory treatment that violates the Equal Protection Clause.

70. As a result of this violation of equal protection, Plaintiff seeks a declaratory judgment that the proposed SAD violates the Equal Protection Clause of the 14th Amendment and an injunction preventing its implementation.

## COUNT VI: MISUSE OF SPECIAL ASSESSMENTS FOR ROUTINE MAINTENANCE

71. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-67, herein.

72. Michigan law allows the use of special assessments primarily to finance capital improvements that provide a direct and special benefit to the properties

assessed, such as road construction, sewer systems, or other similar infrastructure projects. Routine maintenance of existing infrastructure, however, is not the proper subject of a special assessment.

73. The Washtenaw County Road Commission (WCRC) and the Ann Arbor Charter Township Board (collectively, "Defendants") have proposed a Special Assessment District (SAD) for the routine maintenance of Dhu Varren Road (DVR) and Dhu Varren Court (DVC), including unnecessary additions such as beautification and community space projects, which are not capital improvements.

74. Michigan case law and statutory authority, including *In re Petition of Auditor General*, 226 Mich. 170 (1924), and *City of Lansing v. Jenison*, 199 Mich. 405 (1918), confirm that special assessments are limited to public improvements that enhance or directly benefit the assessed properties. Routine services and operational expenses, like road maintenance, fall under the responsibility of public entities and are not appropriately funded through special assessments.

75. The imposition of a SAD to cover the costs of routine maintenance and non-essential community space enhancements violates the intended purpose of special assessments under Michigan law and instead operates as an unlawful general tax.

15

76. The improper use of the SAD to fund operational expenses circumvents Michigan's constitutional limits on general property taxation, depriving Plaintiff and other residents of the protections typically afforded under state law for tax increases, including transparency, proper notice, and voter approval.

77. By attempting to levy a special assessment for purposes beyond capital improvements, Defendants are unlawfully expanding the reach of Public Act 188, contrary to its intent and legal precedent.

78. As a result of this misuse, Plaintiff and other affected residents are unfairly burdened with the financial responsibility for routine maintenance that should be funded through the Michigan Transportation Fund (MTF) and general taxation.

79. Plaintiff seeks a declaratory judgment that the Defendants' use of the SAD for routine road maintenance and additional projects violates Michigan law and an injunction preventing its implementation.

## COUNT VII: FAILURE TO SHOW SPECIAL BENEFIT

80. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-76, herein.

81. Under Michigan law, a special assessment can only be levied if the property being assessed receives a special benefit from the public improvement that is

distinct from the general benefit to the community at large. This principle is well-established in Michigan case law, including *Dixon Rd Group v. City of Novi*, 426 Mich. 390 (1986), and *Adams v. Bay City*, 78 Mich. 211 (1889).

82. Defendants' proposed SAD for Dhu Varren Road (DVR) and Dhu Varren Court (DVC) fails to demonstrate any special benefit to the properties being assessed and such properties that do not have direct access to DVR or DVC, such as those situated on private roads or subject to legal restrictions preventing direct access, receive little to no benefit from the proposed road maintenance.

83. The law requires that any special assessment reflect the proportional benefit each property receives from the public improvement. Defendants have failed to show that properties without direct access to DVR and DVC receive a benefit that justifies their inclusion in the SAD or that such properties should bear an equal share of the assessment.

84. By imposing a flat-rate assessment across all properties without demonstrating the relative benefit to each, Defendants have violated Michigan's legal requirement that special assessments must be proportionate to the benefit received by the property, as established in *Dixon Rd Group* and *Adams v. Bay City*.

85. The failure to account for the variation in benefit between properties located on DVR and DVC and those situated on private roads or subject to legal access restrictions renders the SAD invalid under Michigan law.

86. Furthermore, Defendants' failure to consider the actual increase in property value resulting from the road maintenance, as required by *Dixon Rd Group*, demonstrates that the SAD does not meet the legal threshold for a special assessment.

87. As a result of the Defendants' failure to show a special benefit, Plaintiff and other property owners are being subjected to an unlawful and disproportionate financial burden that exceeds the benefit they receive from the improvement.

88. Plaintiff seeks a declaratory judgment that the SAD is invalid for failure to show a special benefit to all assessed properties and an injunction preventing its enforcement.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Paulette Metoyer, respectfully requests that this Court:

a) Declare that the actions of the Defendants violate the statutory duties under Public Act 51 of 1951;

b) Declare that the use of Public Act 188 for imposing a SAD for routine maintenance is a misuse of the act;

c) Declare that the actions of the Defendants in implementing the SAD without proper notice or a fair hearing process violate the Due Process Clause of the 14th Amendment;

d) Declare that the proposed SAD violates the equal protection principles under the Michigan Constitution and the 14th Amendment of the U.S. Constitution;

e) Grant injunctive relief to prevent the implementation of the proposed SAD;

f) Award Plaintiff her costs and reasonable attorney's fee; and

g) Grant any other relief the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: 9/24/2024

Respectfully submitted,

Matthew C. McManus(P77397)
Attorney for Plaintiff
1550 N. Milford Road, Ste. 102
Milford, MI 48381
(800) 392-7311
mmcmanus@mcmanuspllc.com

## VERIFICATION

**I, PAULETTE METOYER**, Trustee PAULETTE M. METOYER REVOCABLE TRUST DATED JANUARY 15, 1994, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: 09/13/2024

*/s/ Paulette Metoyer*
**PAULETTE METOYER**