UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAULETTE METOYER,

        Plaintiff,

v.

WASHTENAW COUNTY ROAD
COMMISSION et al.,

        Defendants.

_____/

Civil Action No. 24-cv-12503

HON. MARK A. GOLDSMITH

**OPINION & ORDER GRANTING DEFENDANT WASHTENAW COUNTY ROAD COMMISSION'S MOTION TO DISMISS (Dkt. 17)**

Plaintiff Paulette Metoyer, Trustee of the Paulette M. Metoyer Revocable Trust dated January 15, 1994 (Metoyer), alleges that Defendants Ann Arbor Charter Township Board (Township Board) and Washtenaw County Road Commission (Road Commission) violated several of her constitutional rights. Before the Court is the Road Commission's motion to dismiss (Dkt. 17). For the reasons that follow, the Court grants the Road Commission's motion.[1]

### I.   BACKGROUND

Metoyer's complaint alleges the following facts and concern two roads: Dhu Varren Road (DVR) and Dhu Varren Court (DVC). Metoyer has lived on DVR since 1983. Am. Compl. ¶ 21 (Dkt.13). From the 1950s to the mid-1980s, DVR was maintained by the Road Commission as a dirt road. Id. at ¶¶ 22–23. In 1985, in response to a resident petition led by Metoyer, the Township Board created a special assessment district (1985 SAD) under Mich. Comp. Laws § 41.271 et seq.,

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion, the briefing includes Metoyer's response (Dkt. 22) and the Commission's reply (Dkt. 23).

1

and DVR was paved. Id. at ¶¶ 24–27. The Road Commission maintained DVR until the early 2000s when Metoyer alleges it stopped maintaining the road, causing it to deteriorate significantly by 2015. Id. at ¶¶ 28–29, 31–35.

DVC is a dead-end road, which can only be accessed by using DVR. Id. at ¶ 45. DVC was created and paved in 1979 by a real estate developer and became part of the county road system the next year. Id. at ¶¶ 38–41. Although the Road Commission's acceptance of DVC allegedly included an agreement to maintain it, Metoyer alleges that the road deteriorated into gravel-like condition by the mid-1990s due to lack of maintenance. Id. at ¶¶ 42–43. DVC was not included in the 1985 SAD to pave DVR because DVC was already paved. Id. at ¶44.

Because of the roads' deterioration, efforts to create a SAD for both DVR and DVC were renewed again in 2015 and 2016 but did not bear fruit. Id. at ¶¶ 58, 67. Metoyer opposed these efforts through a formal objection letter submitted to the Township Board. Metoyer 2/15/16 Letter at PageID.270–279 (Dkt. 13-4). The letter, totaling nine pages, included a history of the DVR and DVC as well as Metoyer's efforts over the years related to the roads. Id. Related to the 2016 SAD discussions, Metoyer argued that the Road Commission already had an obligation to maintain the DVR under the 1985 SAD so a new SAD was unnecessary. Id. at PageID.270. She also alleged that the Road Commission had presented "false and misleading information"[2] to residents on DVR and DVC. Id. Metoyer also argued that the new SAD would disproportionately benefit the DVC homeowners at the expense of the DVR homeowners. Id.

In 2023, a majority of owners with frontage on DVR and DVC petitioned the Township Board for a new SAD (2023 SAD). Bd. of Tr. Meeting Min. 1/23/23 at PageID.282–283 (Dkt. 13-5). The Township Board initiated the 2023 SAD process under Michigan Act 188 (Mich. Comp.

---

[2] Metoyer did not expound on what the falsity was. Metoyer 2/15/16 Letter at PageID.270.

2

Laws § 41.721), combining the improvement efforts for DVR and DVC into the same SAD. Id. Metoyer again opposed the 2023 SAD by submitting two letters outlining her objections and by speaking twice at the Township Board's public hearing regarding the 2023 SAD. Metoyer 2/17/23 Letter at PageID.304–309 (Dkt. 13-7); Metoyer 4/7/23 Letter at 311–314 (Dkt. 13-8); Bd. of Tr. Meeting Min. 1/23/23 at PageID.294–295. Metoyer's objections were similar to the ones she advanced when opposing the 2015 and 2016 efforts. The two main themes of her arguments were that if the Road Commission had maintained DVR and DVC properly, then a new SAD would not be necessary; and that the cost of the proposed SAD was unfair. See Metoyer 2/17/23 Letter at PageID.304–309; Metoyer 4/7/23 Letter at PageID.311–314. The Township Board ultimately voted to confirm the 2023 SAD in April 2023. Bd of Tr. Meeting Min. 4/24/23 at PageID.583 (Dkt. 17-2).

Metoyer filed the instant action, resulting in her filing an amended complaint that contains 491 paragraphs spread over 87 pages.

## II.  ANALYSIS[3]

Metoyer's amended complaint raises three counts against the Road Commission: (i) "Declaratory Judgment for Unconstitutionality of Public Acts 188 and 246" (Count I); (ii) "Violation of Statutory Obligations, Constitutional Rights, and Misleading Conduct under Color of Law" (Count II); and (iii) "Permanent Injunction and Declaratory Relief to Cease Unlawful SAD Promotion and as a Violation of the Headlee Amendment" (Count III). Am Compl. at

---

[3] To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The plausibility standard requires courts to accept the alleged facts as true and to make all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

PageID.200–218. Distilled to their essence, the claims allege violations of procedural due process, substantive due process, equal protection, along with a state-law claim. Id.

In its motion to dismiss, the Road Commission argues that (i) the counts against it should be dismissed because Metoyer fails to adequately plead the legal requirements of each claim; (ii) her 42 U.S.C. § 1983 claims are time barred; and (iii) the Court should not exercise jurisdiction over Metoyer's state-law claim. See Mot. As explained below, the Court concludes that the constitutional claims are not plausibly pled. Because those federal claims are dismissed, the state-law claim is dismissed without prejudice.

### A. 42 U.S.C. § 1983 Claims

Section 1983 claims "must satisfy two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." Ellison v. Garbarino, 48 F.3d 192, 194 (6th Cir. 1995) (punctuation modified). None of the constitutional claims is legally viable.

#### 1. Procedural and Substantive Due Process

"The Fourteenth Amendment of the United States Constitution protects individuals from the deprivation of life, liberty, or property, without due process of law. U.S. Const. amend. XIV, § 1. The clause contains both a substantive and a procedural component." EJS Props., LLC v. City of Toledo, 698 F.3d 845, 855 (6th Cir. 2012). Procedural due process requires the government provide a "fair procedure" when depriving someone of life, liberty, or property, whereas substantive due process "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992). Metoyer fails to properly allege either aspect of due process.

### a. Procedural Due Process

To establish a claim for a violation of procedural due process, a plaintiff has the burden of showing that "(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." EJS Props., LLC, 698 F.3d at 855 (punctuation modified).

Metoyer argues that the Road Commission violated her procedural due process rights by falsifying or withholding key information regarding the Road Commission's maintenance obligations when adoption of SAD 2023 was under consideration, which in turn misrepresented the SAD's necessity and unfairly hampered her ability to challenge the SAD. Resp. at PageID.621; see also Am. Comp. ¶¶ 142–147.

However, Metoyer fails to explain how the Road Commission's alleged failure to provide accurate information can be viewed as a violation of procedural due process. The hallmark of procedural due process is the right to notice and the opportunity to be heard before a constitutionally protected interest is subject to deprivation. Flaim v Medical Coll. of Ohio, 418 F.3d 629, 635 (6th Cir. 2005) ("Notice and an opportunity to be heard remain the most basic requirements of due process."). The amended complaint makes clear that Metoyer did receive notice and an opportunity to present her views on the 2023 SAD. Am. Compl. ¶¶ 134–135, 139; Metoyer 2/17/23 Letter at PageID.304–309; Metoyer 4/7/23 Letter at PageID.311–314. The amended complaint details that Metoyer took full advantage of that opportunity, submitting various writings, Metoyer 2/17/23 Letter at PageID.304–309; Metoyer 4/7/23 Letter at PageID.311–314, and speaking two times at the public hearing on the SAD. Bd. of Tr. Meeting Mins. 2/20/23 at PageID.294–295.

Her contention is a broader claim: that procedural due process imposes an obligation on the government not to make false or misleading statements during a public process through which governmental proposals are considered for adoption. However, Metoyer presents no authority holding anything of the sort. And the absence of authority is not surprising. If Metoyer's view were the law, then state and local government units and their officials would be ensnared in innumerable lawsuits challenging whether they had fully and accurately educated the public regarding issues that were under legislative consideration. Courts have never accepted the invitation, if one was ever made, to sit in judgment of the veracity of government speakers in a public debate over potential government undertakings. A judicial inquiry into whether government speakers had made inaccurate, misleading, or incomplete statements would, in effect, require potentially a plenary consideration of the myriad technical, historical, and prudential considerations that are the necessary ingredients of government decisions. That daunting task has never been accepted by the courts in the context of affording procedural due process. As such, Metoyer has failed to plead a plausible procedural due process claim.

   b. **Substantive Due Process**

Metoyer also argues that she has established a valid substantive due process claim against the Road Commission. Substantive due process is "[t]he doctrine that certain governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." Pearson v. City of Grand Blanc, 961 F.2d 1211, 1216 (6th Cir. 1992). "Substantive due process prohibits behavior from state actors that shock[s] the conscience and protects those interests that the Supreme Court has found so rooted in the traditions and conscience of our people as to be fundamental." Kerchen v. Univ. of Mich., 100 F.4th 751, 763 (6th Cir. 2024) (punctuation modified). Finding an action conscience-shocking is a "characterization [that]

6

applies to only the most egregious official conduct, ... conduct that is so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency." Cooperrider v. Woods, 127 F.4th 1019, 1041 (6th Cir. 2025) (punctuation modified). This standard "sets a high bar," and it "does not impose constitutional liability on all state actors who simply cause harm." Id. (punctuation modified).

Metoyer argues that the Road Commission "manipulated the SAD process to convert statutory liability into revenue" which demonstrates "arbitrary and bad-faith government action" in "violation of substantive due process." Resp. at PageID.624. The argument appears to be that the Road Commission failed to fulfil its statutory duty to maintain the roads; that it imposed the 2023 SAD, which forced residents to pay again for road services that were already payable by way of the 1985 SAD; and that it did so, in lieu of utilizing another revenue source, the Michigan Transportation Fund (MTF). Metoyer argues that this, together with the financial burden imposed on DVR and DVC residents, "meets the shock the conscience standard." Id.

Metoyer's allegations do not satisfy the appropriate standard. Here, there are no facts alleged showing anything that can be called "arbitrary" or "conscience shocking." Whatever actions the Road Commission took were directed at maintaining the roads, the specific manner and means for which are consigned to the Road Commission's discretion. Canton Twp. v Wayne Cty. Rd. Comm'n, 367 N.W.2d 385, 387 (Mich. App. 1985) ("[T]he methods employed by the road commission in maintaining the roads are left to their discretion."). That goal is certainly appropriate, as Metoyer concedes the Road Commission's statutory duties in that regard. Am. Compl. ¶ 15–16. And there was nothing arbitrary or conscience-shocking in assisting in the creation of a SAD to produce a stable and sufficient source of revenue to pay for road improvements. Choosing how to finance government expenditures is not a matter for judicial

7

second-guessing. Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 526 (1959) ("The States have a very wide discretion in the laying of their taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the National Government or violating the guaranties of the Federal Constitution, the States have the attribute of sovereign powers in devising their fiscal systems to ensure revenue and foster their local interests.").

Because the Road Commission's actions serve legitimate government interests, they were not arbitrary or conscience shocking. Valot v. Southeast Loc. Sch. Dist. Bd. of Educ., 107 F.3d 1220, 1228 (6th Cir. 1997) ("Where government action does not deprive a plaintiff of a particular constitutional guarantee or shock the conscience, that action survives the scythe of substantive due process so long as it is rationally related to a legitimate state interest.").

Metoyer's has not pled a plausible substantive due process claim.

2. **Equal Protection**

The Equal Protection Clause of the Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The clause is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). When reviewing state action challenged under the Equal Protection Clause, courts "apply different levels of scrutiny to different types of classifications." Clark v. Jeter, 486 U.S. 456, 461 (1988). The parties agree that a rational basis level of scrutiny is appropriate in this case. Mot. at PageID.567; Resp. at PageID.627. Under rational basis review, government action "is presumed to be valid," and the plaintiff must demonstrate that the challenged action "is not rationally related to a legitimate state interest." City of Cleburne, 473 U.S. at 440.

Metoyer says she is being treated differently from other property owners in that (i) other county-maintained roads' routine maintenance were financed through "full public funding," while DVR was singled out for a "duplicative assessment" under the 1985 SAD and the 2023 SAD and (ii) in the 2023 SAD, DVR and DVC residents are "bundled," despite "vastly different conditions, effectively overcharging DVR residents." Resp at PageId.627–628. The Court disagrees.

The "rational basis" standard does not give a court "a license…to judge the wisdom, fairness or logic of legislative choices." F.C.C. v Beach Comm., 508 U.S. 307, 313 (1993). The standard is designed to afford states "wide latitude" when crafting "economic and social legislation." City of Cleburne, 473 U.S. at 440. In reviewing an equal protection challenge under the "rational basis" lens, a court can "hypothesize" a governmental purpose, Haves v. City of Miami, 52 F.3d 918, 922 (11th Cir. 1995), and is not bound by the parties' argument as to that issue. Hope For Fams. & Cmty. Serv., Inc. v. Warren, 721 F. Supp. 2d 1079, 1139 (M.D. Ala. 2010). As the Hope court explained:

> In other words, if there are "plausible reasons" for the government's action, the court's "inquiry is at an end." Beach, 508 U.S. at 313–314. Thus, "[i]n the ordinary case, a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." Romer v. Evans, 517 U.S. 620, 632 (1996) (collecting cases). Because states are "accorded wide latitude in the regulation of their local economies under their police powers, ... rational distinctions may be made with substantially less than mathematical exactitude." City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976) (per curiam). A legislative classification "need not be drawn so as to fit with precision the legitimate purposes animating it." Hughes v. Alexandria Scrap Corp., 426 U.S. 794, 814 (1976). "Even foolish and misdirected" regulations "are generally valid" under rational basis review. Craigmiles v. Giles, 312 F.3d 220, 223–24 (6th Cir. 2002).

Id. (punctuation modified).

The Supreme Court has recognized that states have "especially broad latitude in creating classifications and distinctions in tax statutes." Regan v Taxation With Representation of Washington, 461 U.S. 540, 547 (1983). Local government's familiarity with local conditions and

local usages explains the deference federal courts have shown for giving expansive discretion to local governments to draw distinctions in matters of public spending and taxing:

> The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized.... [T]he passage of time has only served to underscore the wisdom of that recognition of the large area of discretion which is needed by a legislature in formulating sound tax policies. Traditionally classification has been a device for fitting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden. It has, because of this, been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.

Madden v. Kentucky, 309 U.S. 83, 87–88 (1940).

"Ordinarily, administrative considerations can justify a tax-related distinction." Armour v. City of Indianapolis, 566 U.S. 673, 682 (2012). In Armour, the court rejected an equal protection challenge to a city ordinance that forgave tax obligations owed by some property owners who had not paid their full assessment for a septic tank elimination program, while refusing to make refunds to property owners who had paid in full. Id. at 682–684. Administrative cost and ease of program execution legitimated the line-drawing in that case. Id.

The Court agrees with the Road Commission's argument that the 2023 SAD enactment survives rational basis review. Mot. at PageID.569. The purpose of the 2023 SAD was to offset the cost of road construction, improvement, or maintenance for DVR and DVC, thus justifying their being bundled. Bd. of Tr. Meeting Mins. 1/23/23 at PageID.282–285; Bd. of Tr. Meeting Mins. 2/20/23 at PageID.292–297. The bundling is also justified as the two roads are connected, with access to DVC only available through DVR. Am. Compl. ¶ 45. Requiring property owners to bear some or all of the cost of roads that they utilize most intensively, rather than tap into other funds, rationally serves the purpose of placing the burden on those who benefit most from the

roads.[4] Consistent with the above authorities, the program adopted served both equitable and administrative considerations. Metoyer has failed to state an equal protection claim.

Because Metoyer has failed to establish that she has been deprived of a right secured by the Constitution or the laws of the United States, she has no basis for a claim under 42 U.S.C. § 1983.[5] Therefore, her federal claim as to the Road Commission is dismissed.

### B. State-Law Claim: Violation of the Headlee Amendment

Metoyer's last claim against the Road Commission is for permanent injunction and declaratory relief to "cease unlawful SAD promotion as a violation of the Headlee Amendment (Michigan Constitution, Article IX, Section 31). See Count III of Am. Compl. at PageID. 213–218. Because Metoyer has failed to state a federal cause of action against the Road Commission, the Court will decline supplemental jurisdiction over the state-law claims in Count III alleged against the Road Commission. See 28 U.S.C. § 1367(c)(3). The claim is denied without prejudice.

### III. CONCLUSION

For the reasons explained above, the Court grants the Road Commission's motion to dismiss (Dkt. 17). Metoyer's federal claims are dismissed with prejudice and her state-law claim is dismissed without prejudice.

**SO ORDERED.**

Dated: September 29, 2025           s/Mark A. Goldsmith
Detroit, Michigan                   MARK A. GOLDSMITH
                                          United States District Judge

---

[4] Metoyer does not fare better under her "class of one" theory, which requires the proponent to show personal animus or negate any conceivable rational basis. Benjamin v. Brachman, 246 F. App'x 905, 927 (6th Cir. 2007). Metoyer has not alleged any bias, and, as explained above, there is a rational basis for 2023 SAD.

[5] The Court does not address the Road Commission's argument that Metoyer's § 1983 claims are time-barred because it dismisses the claims on other grounds.